UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

GREGORY HARDY,

                Plaintiff,                Case No. 1:13-cv-1133

v.                                              Honorable Janet T. Neff

INGHAM COUNTY JAIL et al.,

                Defendants.
_____/

## **OPINION**

This is a civil rights action brought by a former state prisoner under 42 U.S.C. § 1983. The Court has granted Plaintiff leave to proceed *in forma pauperis*. Under the Prison Litigation Reform Act, PUB. L. NO. 104-134, 110 STAT. 1321 (1996), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. § 1915(e)(2). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will dismiss Plaintiff's complaint for failure to state a claim against Defendants Ingham County Jail and Wriggelsworth. The Court will serve the complaint against Defendants Montimayor, Johnson, Agueros, Hagerman, Moore and Shelly.

**Discussion**

I.      Factual allegations

Plaintiff Gregory Hardy was incarcerated at the Ingham County Jail at various points between October 15, 2012 and October 7, 2013.[1] He sues the Ingham County Jail (ICJ) and the following jail personnel: Sheriff Gene L. Wriggelsworth; Deputies (unknown) Montimayor, D. Johnson, (unknown) Agueros and (unknown) Hagerman; Nurse Christina Moore; and Nurse Practitioner (unknown) Shelly.

According to the complaint, when Plaintiff arrived at the ICJ on October 15, 2012, he was taking two psychotropic medications: 100 mg of Zoloft and 600 mg of Seroquel. Plaintiff alleges that, between his arrival on October 15, 2012 and his release on October 22, 2012, the medications "began to be altered when the prescribed medications ordered were being issued by the defendants deputies, one in particular Defendant D. Johnson where she on more than one occasion gave him the wrong medications." (Compl. ¶ 6, docket #1, Page ID#3.)

After Plaintiff reported to the ICJ on December 13, 2012, Defendant Nurse Christina Moore allegedly issued medications, though she allegedly appeared not to have a license to issue medications, given her lack of understanding of the medications being issued. Plaintiff alleges that the morning medications were distributed at noon, and the evening medications were distributed at midnight or 1:00 a.m. On more than one occasion, Moore refused to look for Plaintiff's

---

[1] Plaintiff's allegations about the periods of his incarceration are less than clear. It appears, however, that he served a jail sentence intermittently, in a series of weekend or longer periods. Plaintiff does not report every period during which he was jailed, but he identifies certain periods of incarceration. According to the complaint, Plaintiff reported to the jail as directed on October 15, 2012, and he remained incarcerated at the jail until October 22, 2012. He reported on December13, 2012, and he remained for an unspecified period. He reported again on January 29, 2013, and he was released on February 8, 2013. Plaintiff again reported to the jail on September 25, 2013 and he was released at an unspecified date. He re-entered for a weekend of incarceration on October 3, 2013, and he was released on October 7, 2013.

medications, so he did not receive them. Plaintiff alleges that, because of the changes in the medication schedule, he experienced reactions such as vomiting, hallucinations, paranoia, hearing voices, lack of sleep, and repeated mood swings. Plaintiff does not indicate when he was released from the jail.

Plaintiff again reported to the jail on January 29, 2013. At that time, prisoner Terrion Trashun Smith was placed in the same dormitory as Plaintiff. Plaintiff immediately told Defendant Montimayor that he feared for his safety, as prisoner Smith previously had assaulted Plaintiff on September 7, 2012, resulting in knee injuries. Montimayor asked Plaintiff to write a kite concerning his complaint so that Montimayor's supervisor could be made aware. Following review, Montimayor and unnamed Defendants refused to move either Plaintiff or Smith. On February 1, 2013, Smith again assaulted Plaintiff, hitting him in the head with a food tray. Defendant Johnson witnessed the attack. Plaintiff was knocked unconscious and experienced a head injury, from which he is still experiencing migraines. Plaintiff was released on February 8, 2013.

On September 25, 2013, Plaintiff reentered the ICJ, bringing his psychotropic medications with him. At that time, Plaintiff was taking the following medications: 2mg of Risperdol, 100 mg of Zoloft, and 600 mg of Seroquel. He again did not receive his medications. Plaintiff alleges that Defendant Moore concealed his medications, and conspired with Defendants Agueros and Hagerman in retaliation for his complaints. Plaintiff does not allege the date on which he was released.

Plaintiff subsequently reentered the jail for the weekend on October 3, 2013. Defendant Moore was belligerent with Plaintiff because of his prior complaints. Plaintiff's medications again disappeared. Moore told Plaintiff that she was tired of him questioning her about

his medications. Thereafter, another nurse brought only some of Plaintiff's medications. Defendant Moore told Plaintiff that his Zoloft and Risperdol had been discontinued by Defendant Shelly. Plaintiff's received Seroquel, but the dosage was reduced to 300 mg. Plaintiff experienced paranoia, vomiting, lack of sleep, hallucinations, hearing voices and major depression. Plaintiff alleges that Defendants Moore and Agueros told him that they were setting him up "because he had become a pain in the ass." (*Id.* ¶ 14, Page ID#6.) Defendant Hagerman increased Plaintiff's security level to 9, causing him to be kept in his cell without water or a toilet during a routine weekend stay of incarceration. Plaintiff alleges that he was forced to urinate on the cell floor. When Plaintiff was released on October 7, 2013, his medications were not returned to him, ostensibly because no nurse was on duty.

Plaintiff alleges that during the entire one-year period of his intermittent incarceration, he was never provided out-of-cell exercise. He also alleges that he attempted to use the ICJ complaint and grievance procedures on every occasion about which he complains. He contends, however, that the assigned deputies disposed of his complaints, so Plaintiff never received any responses to his grievances.

Plaintiff sues all Defendants in their individual and official capacities for violations of his rights under the First, Eighth and Fourteenth Amendments. He seeks compensatory and punitive damages.

II. Failure to state a claim

A complaint may be dismissed for failure to state a claim if it fails "'to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While

a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Twombly*, 550 U.S. at 555; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 679 (quoting FED. R. CIV. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470-71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(i)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

### A.   ICJ

Plaintiff sues the ICJ. The jail is a building, not an entity capable of being sued in its own right. However, construing Plaintiff's *pro se* complaint with all required liberality, *Haines*, 404 U.S. at 520, the Court assumes that Plaintiff intended to sue Ingham County. Ingham County may not be held vicariously liable for the actions of its employees under § 1983. *See Connick v. Thompson*, 131 S. Ct. 1350, 1359 (2011); *City of Canton v. Harris*, 489 U.S. 378, 392 (1989); *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978). Instead, a county is liable only when its official policy or custom causes the injury. *Id.*

Plaintiff's allegations against the county essentially rest on a theory of vicarious liability, and therefore do not state a claim. *Id.* As the Supreme Court has instructed, to demonstrate that a municipality had an unlawful custom, a plaintiff must show that the municipality was deliberately indifferent to "practices so persistent and widespread as to practically have the force of law." *Connick*, 131 S. Ct. at 1359. Plaintiff fails even to allege the existence of a custom of denying prisoners their required medications. Plaintiff cites no prior incidents demonstrating a widespread pattern. Instead, he merely complains that the jail, and thereby the county, were constitutionally responsible for his treament. Conclusory allegations of unconstitutional conduct, without specific factual allegations, fail to state a claim under § 1983. *See Iqbal*, 556 U.S. at 678; *Twombly*, 550 U.S. at 555. Plaintiff therefore fails to state a claim against Ingham County. Accordingly, the Court will dismiss the ICJ and, by implication, Ingham County.

### B.   Defendant Wriggelsworth

It is a basic pleading essential that a plaintiff attribute factual allegations to particular defendants. *See Twombly*, 550 U.S. at 544 (holding that, in order to state a claim, Plaintiff must

-6-

make sufficient allegations to give a defendant fair notice of the claim).  Where a person is named as a defendant without an allegation of specific conduct, the complaint is subject to dismissal, even under the liberal construction afforded to *pro se* complaints.  *See Frazier v. Michigan*, 41 F. App'x 762, 764 (6th Cir. 2002) (dismissing plaintiff's claims where the complaint did not allege with any degree of specificity which of the named defendants were personally involved in or responsible for each alleged violation of rights); *Griffin v. Montgomery*, No. 00-3402, 2000 WL 1800569, at *2 (6th Cir. Nov. 30, 2000) (requiring allegations of personal involvement against each defendant)); *Rodriguez v. Jabe*, No. 90-1010, 1990 WL 82722, at *1 (6th Cir. June 19, 1990) ("Plaintiff's claims against those individuals are without a basis in law as the complaint is totally devoid of allegations as to them which would suggest their involvement in the events leading to his injuries."); *see also Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994); *Krych v. Hvass*, 83 F. App'x 854, 855 (8th Cir. 2003); *Potter v. Clark*, 497 F.2d 1206, 1207 (7th Cir. 1974); *Williams v. Hopkins*, No. 06-14064, 2007 WL 2572406, at *4 (E.D. Mich. Sept. 6, 2007); *McCoy v. McBride*, No. 3:96-cv-227RP, 1996 WL 697937, at *2 (N.D. Ind. Nov. 5, 1996); *Eckford-El v. Toombs*, 760 F. Supp. 1267, 1272-73 (W.D. Mich. 1991).  Plaintiff fails to even mention Defendant Wriggelsworth in the body of his complaint.  His allegations fall far short of the minimal pleading standards under FED. R. CIV. P. 8 which require "a short and plain statement of the claim showing that the pleader is entitled to relief."

Moreover, even assuming that Plaintiff intended to allege that Defendant Wriggelsworth is responsible for the actions of his subordinates, he fails to state a claim. Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior or vicarious liability.  *Iqbal*, 556 U.S. at 676; *Monell*, 436 U.S. at 691; *Everson v. Leis*, 556 F.3d 484, 495 (6th Cir. 2009).  A claimed constitutional violation must

be based upon active unconstitutional behavior. *Grinter v. Knight*, 532 F.3d 567, 575 (6th Cir. 2008); *Greene v. Barber*, 310 F.3d 889, 899 (6th Cir. 2002). The acts of one's subordinates are not enough, nor can supervisory liability be based upon the mere failure to act. *Grinter*, 532 F.3d at 575; *Greene*, 310 F.3d at 899; *Summers v. Leis*, 368 F.3d 881, 888 (6th Cir. 2004). Moreover, § 1983 liability may not be imposed simply because a supervisor denied an administrative grievance or failed to act based upon information contained in a grievance. *See Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999). "[A] plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676. Plaintiff has failed to allege that Defendant Wriggelsworth engaged in any active unconstitutional behavior. Accordingly, he fails to state a claim against him.

### C. Remaining Defendants

Upon initial review, the Court concludes that Plaintiff's allegations are sufficient to warrant service upon Defendants Montimayor, Johnson, Agueros, Hagerman, Moore and Shelly.

### Conclusion

Having conducted the review required by the Prison Litigation Reform Act, the Court determines that Defendants Ingham County Jail and Wriggelsworth will be dismissed for failure to state a claim pursuant to 28 U.S.C. § 1915(e)(2). The Court will serve the complaint against Defendants Montimayor, Johnson, Agueros, Hagerman, Moore and Shelly.

An Order consistent with this Opinion will be entered.

Dated:   December 6, 2013            /s/ Janet T. Neff
                                                         Janet T. Neff
                                                         United States District Judge