UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

GREGORY HARDY,

                Plaintiff,                                    Hon. Janet T. Neff

v.                                                 Case No. 1:13 CV 1133

INGHAM COUNTY JAIL, et al.,

                Defendants.

_____/

## REPORT AND RECOMMENDATION

        This matter is before the Court on <u>Defendants' Motion for Summary Judgment</u>, (Dkt. #26), and <u>Plaintiff's Motion for Summary Judgment</u>, (Dkt. #38). Pursuant to 28 U.S.C. § 636(b)(1)(B), the undersigned recommends that Plaintiff's motion be **denied** and Defendants' motion be **granted in part and denied in part**.

## BACKGROUND

        Plaintiff Gregory Hardy was incarcerated at the Ingham County Jail for various periods of time between October 15, 2012 and October 7, 2013.[1]  Plaintiff initiated this action against the Ingham County Jail (ICJ) and the following jail personnel:  Sheriff Gene L. Wriggelsworth; Deputies (unknown) Montimayor, D. Johnson, (unknown) Agueros and (unknown) Hagerman; Nurse Christina

---

[1] Plaintiff's allegations about the periods of his incarceration are less than clear. It appears, however, that during the time period in question, Plaintiff served a jail sentence intermittently, in a series of weekend or longer periods. Plaintiff does not appear to have identified every period during which he was jailed, but he has identified certain discrete periods of incarceration. Plaintiff alleges that he reported to the jail on October 15, 2012, where he remained until October 22, 2012. He returned to the jail on December 13, 2012, where he remained for an unspecified period. He reported again on January 29, 2013, and he was released on February 8, 2013. Plaintiff reported to the jail on September 25, 2013 and was released on an unspecified date. Plaintiff re-entered the jail on October 3, 2013, and was released on October 7, 2013.

Moore; and Nurse Practitioner (unknown) Shelly.  The following allegations are contained in Plaintiff's complaint.  (Dkt. #1).

When Plaintiff arrived at the ICJ on October 15, 2012, he was taking two prescribed psychotropic medications: (1) Zoloft and (2) Seroquel.  Between October 15, 2012, and October 22, 2012, Defendant Johnson, on multiple occasions, failed to provide Plaintiff with his prescribed medications.  Plaintiff returned to the jail on December 13, 2012, after which Defendant Moore failed to regularly provide Plaintiff with his prescribed medications and, furthermore, failed to deliver Plaintiff's medications at the appropriate times.

When Plaintiff reported to the jail on January 29, 2013, he was placed in the same dormitory as prisoner Terrion Smith.  Plaintiff immediately told Defendant Montimayor that he feared for his safety.  Plaintiff informed Montimayor that Smith had assaulted him only a few months previously.  Montimayor instructed Plaintiff to "write a statement on a kite, so that his immediate supervisor would be made aware."  After reviewing Plaintiff's kite, jail officials concluded that Smith "would not be a danger to the plaintiff" and, therefore, declined to place Plaintiff and Smith in separate dormitories.  On February 1, 2013, Smith assaulted Plaintiff, hitting him in the head with a food tray.

On September 25, 2013, Plaintiff re-entered the jail, after which Defendants Moore, Agueros, and Hagerman conspired to deny Plaintiff his medications in retaliation for complaints Plaintiff previously made against Moore.  Plaintiff returned to the jail on October 3, 2013.  Defendant Moore told Plaintiff that she was tired of him questioning her about his medications.  Thereafter, Plaintiff was provided only some of his medications.  Defendant Moore told Plaintiff that some of his medications had been discontinued by Defendant Shelly.  At some unspecified time, presumably after his October 3, 2013 return to the jail, Defendants Moore and Agueros told Plaintiff that they were setting him up

"because he had become a pain in the ass."  Defendant Hagerman later increased Plaintiff's security level, causing Plaintiff to be placed in a cell without water or a toilet.

During the entire time period in question, Plaintiff was housed with prisoners from the Michigan Department of Corrections and, moreover, was never afforded out-of-cell exercise opportunities.  As a result of not receiving all his prescribed medications during the time period in question, Plaintiff experienced paranoia, vomiting, lack of sleep, hallucinations, hearing voices, and major depression.  Plaintiff's claims against Defendants Ingham County Jail and Sheriff Wrigglesworth have since been dismissed.  The remaining defendants now move for summary judgment.  Plaintiff also moves for summary judgment.


## LEGAL STANDARD

Summary judgment "shall" be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  A party moving for summary judgment can satisfy its burden by demonstrating "that the respondent, having had sufficient opportunity for discovery, has no evidence to support an essential element of his or her case."  *Minadeo v. ICI Paints*, 398 F.3d 751, 761 (6th Cir. 2005); *see also*, *Amini v. Oberlin College*, 440 F.3d 350, 357 (6th Cir. 2006) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986)).  The fact that the evidence may be controlled or possessed by the moving party does not change the non-moving party's burden "to show sufficient evidence from which a jury could reasonably find in her favor, again, so long as she has had a full opportunity to conduct discovery."  *Minadeo*, 398 F.3d at 761 (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 257 (1986)).

Once the moving party demonstrates that "there is an absence of evidence to support the nonmoving party's case," the non-moving party "must identify specific facts that can be established by admissible evidence, which demonstrate a genuine issue for trial." *Amini*, 440 F.3d at 357 (citing *Anderson*, 477 U.S. at 247-48; *Celotex Corp. v. Catrett*, 477 U.S. at 324). While the Court must view the evidence in the light most favorable to the non-moving party, the party opposing the summary judgment motion "must do more than simply show that there is some metaphysical doubt as to the material facts." *Amini*, 440 F.3d at 357. The existence of a mere "scintilla of evidence" in support of the non-moving party's position is insufficient. *Daniels v. Woodside*, 396 F.3d 730, 734-35 (6th Cir. 2005) (quoting *Anderson*, 477 U.S. at 252). The non-moving party "may not rest upon [his] mere allegations," but must instead present "significant probative evidence" establishing that "there is a genuine issue for trial." *Pack v. Damon Corp.*, 434 F.3d 810, 813-14 (6th Cir. 2006) (citations omitted).

Moreover, the non-moving party cannot defeat a properly supported motion for summary judgment by "simply arguing that it relies solely or in part upon credibility determinations." *Fogerty v. MGM Group Holdings Corp., Inc.*, 379 F.3d 348, 353 (6th Cir. 2004). Rather, the non-moving party "must be able to point to some facts which may or will entitle him to judgment, or refute the proof of the moving party in some material portion, and. . .may not merely recite the incantation, 'Credibility,' and have a trial on the hope that a jury may disbelieve factually uncontested proof." *Id.* at 353-54. In sum, summary judgment is appropriate "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Daniels*, 396 F.3d at 735.

While a moving party without the burden of proof need only show that the opponent cannot sustain his burden at trial, *see Morris v. Oldham County Fiscal Court*, 201 F.3d 784, 787 (6th

Cir. 2000); *Minadeo*, 398 F.3d at 761, a moving party with the burden of proof faces a "substantially higher hurdle." *Arnett v. Myers*, 281 F.3d 552, 561 (6th Cir. 2002); *Cockrel v. Shelby County Sch. Dist.*, 270 F.3d 1036, 1056 (6th Cir. 2001). "Where the moving party has the burden -- the plaintiff on a claim for relief or the defendant on an affirmative defense -- his showing must be sufficient for the court to hold that no reasonable trier of fact could find other than for the moving party." *Calderone v. United States*, 799 F.2d 254, 259 (6th Cir. 1986) (quoting W. SCHWARZER, *Summary Judgment Under the Federal Rules: Defining Genuine Issues of Material Fact*, 99 F.R.D. 465, 487-88 (1984)). The Sixth Circuit has repeatedly emphasized that the party with the burden of proof "must show the record contains evidence satisfying the burden of persuasion and that the evidence is so powerful that no reasonable jury would be free to disbelieve it." *Arnett*, 281 F.3d at 561 (quoting 11 JAMES WILLIAM MOORE, ET AL., MOORE'S FEDERAL PRACTICE § 56.13[1], at 56-138 (3d ed. 2000); *Cockrel*, 270 F.2d at 1056 (same). Accordingly, summary judgment in favor of the party with the burden of persuasion "is inappropriate when the evidence is susceptible of different interpretations or inferences by the trier of fact." *Hunt v. Cromartie*, 526 U.S. 541, 553 (1999).

## ANALYSIS

### I.        Medication Claims

Plaintiff has asserted two distinct claims regarding the provision of his medications: (1) from October 15, 2012, through October 7, 2013, Defendants Johnson, Moore, Agueros, Hagerman, and Shelly failed to provide Plaintiff with his properly prescribed medications; and (2) beginning on or about December 13, 2012, Defendant Moore failed to provide Plaintiff his medications at the correct times.

The Eighth Amendment's prohibition against cruel and unusual punishment applies not only to punishment imposed by the state, but also to deprivations which occur during imprisonment and are not part of the sentence imposed.  *See Farmer v. Brennan*, 511 U.S. 825, 834 (1994); *Estelle v. Gamble*, 429 U.S. 97, 101-02 (1976).   Accordingly, the Eighth Amendment protects against the unnecessary and wanton infliction of pain, the existence of which is evidenced by the "deliberate indifference" to an inmate's "serious medical needs."  *Estelle*, 429 U.S. at 104-06; *Napier v. Madison County, Kentucky*, 238 F.3d 739, 742 (6th Cir. 2001).  The analysis by which a defendant's conduct is evaluated consists of two-steps.  First, the Court must determine, objectively, whether the alleged deprivation was sufficiently serious.  A "serious medical need," sufficient to implicate the Eighth Amendment, is "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention."  *Harrison v. Ash*, 539 F.3d 510, 518 (6th Cir. 2008).  If the objective test is met, the Court must then determine whether the defendant possessed a sufficiently culpable state of mind:

> a prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of the facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.

*Id.* at 837.

In other words, the plaintiff "must present evidence from which a trier of fact could conclude 'that the official was subjectively aware of the risk' and 'disregard[ed] that risk by failing to take reasonable measures to abate it."  *Greene v. Bowles*, 361 F.3d 290, 294 (6th Cir. 2004) (citing *Farmer*, 511 U.S. at 829, 847).

-6-

To the extent, however, that the plaintiff simply disagrees with the treatment he received, or asserts that he received negligent care, the defendant is entitled to summary judgment. *See Rouster v. County of Saginaw*, 749 F.3d 437, 447 (6th Cir. 2014) ("a plaintiff alleging deliberate indifference must show more than negligence of the misdiagnosis of an ailment"); *Williams v. Mehra*, 186 F.3d 685, 691 (6th Cir. 1999) (citing *Estelle*, 429 U.S. at 105-06) ("[m]edical malpractice does not become a constitutional violation merely because the victim is a prisoner"); *Brown v. Kashyap*, 2000 WL 1679462 at *1 (6th Cir., Nov. 1, 2000) (citing *Estelle*, 429 U.S. at 106) ("allegations of medical malpractice or negligent diagnosis and treatment" do not implicate the Eighth Amendment); *Mingus v. Butler*, 591 F.3d 474, 480 (6th Cir. 2010) (to prevail on an Eighth Amendment denial of medical treatment claim, "the inmate must show more than negligence or the misdiagnosis of an ailment").

A.      Denial of Medications

As noted above, Plaintiff alleges that throughout the time period in question, October 15, 2012, through October 7, 2013, he was not regularly or consistently provided with his prescribed medications. The precise nature of these claims is not clear from Plaintiff's complaint. The Court notes, however, that while Defendants could have moved the Court to order Plaintiff to provide a more definite statement of his claims, they declined to do so. *See* Fed. R. Civ. P. 12(e). Instead, Defendants have moved for summary judgment asserting several arguments none of which are persuasive.

First, Defendants argue that Plaintiff's claims fail because he has "utterly failed to place verifying medical evidence in the record to establish the detrimental effect of the delay in medical treatment." As noted above, a denial of medical treatment claim is comprised of an objective component and a subjective component. The objective component examines whether the plaintiff was experiencing

a medical need sufficiently serious to implicate the Eighth Amendment.  Where "the seriousness of a prisoner's need[ ] for medical care is obvious even to a lay person," this obviousness is by itself sufficient to satisfy the objective component of the analysis.  *Johnson v. Karnes*, 398 F.3d 868, 874 (6th Cir. 2005) (citation omitted).  It is only when the request for medical care involves "minor maladies or non-obvious complaints of a serious need for medical care" that the plaintiff must "place verifying medical evidence in the record to establish the detrimental effect of the delay in medical treatment." *Id.* (citations omitted).

Here, the evidence reveals that Plaintiff was prescribed psychotropic medication prior to his incarceration in the Ingham County Jail.  (Dkt. #34, Exhibit 11).  Defendants concede in their motion that the medication in question is prescribed to treat serious mental illness.  Furthermore, while there exists a dispute as to whether Plaintiff was regularly provided his prescribed medications, jail officials recognized the need for the medications in question and apparently agreed to provide such.  (Dkt. #34, Exhibits 11-17).  Thus, Defendants cannot argue that Plaintiff was suffering a minor malady or a non-obvious need for medical care.  Accordingly, with respect to these particular claims, Plaintiff is not required to introduce medical evidence verifying the detrimental effect of his alleged lack of treatment.

While Plaintiff's complaint is not a model of clarity, the dispute is whether Defendants consistently provided Plaintiff with the appropriate medications in the appropriate dosages.  In support of their motion for summary judgment, Defendants have submitted 462 pages of Daily Reports completed by jail officials during the time period in questions.  (Dkt. #27, Exhibit 2; Dkt. 28-33).  Defendants assert that these Daily Reports establish that Plaintiff was given his medications as prescribed without fail.  The Court is not persuaded.

These Daily Reports appear to be records maintained concerning all manner of activity taking place throughout the jail and do not specifically concern Plaintiff. Despite the voluminous nature of this submission and the fact that the overwhelming majority of such does not in any way concern Plaintiff or the claims presently at issue, Defendants have completely failed to assist the Court in any way by identifying or specifying particular pages or portions thereof that support their motion. Defendants have moved for summary judgment and in so doing have an obligation to identify with some measure of specificity the grounds on which such relief is based. *See Wimbush v. Wyeth*, 619 F.3d 632, 638 n.4 (6th Cir. 2010) (noting that the obligation rests with the movant "to point to the evidence with specificity and particularity in the relevant brief rather than just dropping a pile of paper on the district judge's desk and expecting [her] to sort it out"). Or, as has been more artfully stated, "judges are not like pigs, hunting for truffles that might be buried in the record." *See, e.g., Emerson v. Novartis Pharmaceuticals Corp.*, 446 Fed. Appx. 733, 736 (6th Cir., Aug. 23, 2011). Having failed to identify with even a minimal level of specificity any portion(s) of the 462 pages of Daily Reports that support their position, or identified any other evidence in support thereof, this particular argument is rejected.[2]

Defendants assert several additional arguments. In their brief, Defendants assert that "on the occasion referenced in ¶6 of his Complaint, [Plaintiff] had been given the wrong medication, so he brought it to the attention of the person who handed him the wrong substance and then received the correct medication." (Dkt. #27 at Page ID# 122). Defendants cite to no evidence in support of this

---

[2] The Court notes that it did attempt to undertake an examination of the Daily Reports to determine whether Defendants' argument could be assessed without unreasonable effort. This effort, however, did not advance Defendants' cause. For example, the Daily Reports for December 15, 2012, through December 17, 2012, do not appear to support Defendants' position that Plaintiff was provided his medications on these days. (Dkt. #28 at Page ID#222-41). The Court, therefore, concludes that before expending an inordinate amount of time reviewing several hundred pages of detailed reports in search of alleged evidence supporting Defendants' argument, Defendants must first satisfy their obligation to reasonably identify the portions of these reports which arguably support their request for relief.

assertion.  Summary judgment cannot be granted on the basis of unsubstantiated assertions.  *See, e.g.,* *Rogers v. Lilly*, 292 Fed. Appx. 423, 428 n.3 (6th Cir., Aug. 22, 2008) ("only admissible evidence may be considered by the trial court in ruling on a motion for summary judgment").

Defendants next assert that "minor delays in administering medications, *combined with institutional security concerns over introducing drugs into the inmate population*, simply do not rise to the level of a constitutional violation or demonstrate requisite constitutional harm."  (Dkt. #27 at Page ID# 123) (emphasis added).  Even if the Court assumes the accuracy of this assertion, Defendants have identified no evidence that Plaintiff was not provided his medications because of legitimate institutional security concerns.  Defendants also argue that they are entitled to relief because there exists anecdotal evidence that prisoners occasionally fake psychotic symptoms in an attempt to obtain psychotropic medication.  This argument fails because Defendants have presented no evidence that Plaintiff's psychiatric symptoms were deemed to be faked, disingenuous, or otherwise not requiring treatment.

Finally, Defendants argue that because Plaintiff suffers from paranoid schizophrenia and abuses drugs and alcohol, jail officials were entitled to possess "a healthy skepticism as to any pharmaceuticals [Plaintiff] might bring to the jail."  (Dkt. #27 at Page ID# 124).  The Court does not dispute that jail officials should verify the legitimacy and necessity of any request for medication or prescription provided by an inmate.  The Court fails to discern, however, how this notion advances Defendants' cause.  As previously noted, Plaintiff was prescribed psychotropic medication prior to his detention in the Ingham County Jail and jail officials seem to have recognized the need for this medication and  apparently agreed to provide such, indicating that whatever skepticism they may have initially harbored had been satisfied.  Moreover, there is no evidence suggesting that the prescriptions in question were subsequently determined to be fraudulent, unnecessary, or otherwise improper.

In sum, for the reasons articulated herein, the undersigned recommends that Defendants' motion for summary judgment be denied as to Plaintiff's claims that from October 15, 2012, through October 7, 2013, Defendants Johnson, Moore, Agueros, Hagerman, and Shelly failed to provide Plaintiff with his properly prescribed medications. The undersigned further recommends that Plaintiff's motion for summary judgment be denied as to these claims as Plaintiff has failed to present evidence sufficient to merit summary judgment on claims as to which he bears the burden at trial.

B.      Providing Medications at the Incorrect Times

Plaintiff alleges that beginning on or about December 13, 2012, Defendant Moore failed to provide his medications at "the prescribed time ordered."[3] (Dkt. #1 at Page ID#3). As discussed above, the objective component of the analysis assesses whether the alleged deprivation was sufficiently serious to implicate the Eighth Amendment. Unlike the claims discussed in the preceding section, these particular claims involve allegations that medical treatment was *delayed* rather than completely *denied*. Where a prisoner alleges that a delay in medical treatment violates the Eighth Amendment, he "must place verifying medical evidence in the record to establish the detrimental effect of the delay in medical treatment." *Napier v. Madison County, Kentucky*, 238 F.3d 739, 742 (6th Cir. 2001). Plaintiff has failed to present any such evidence. Accordingly, with respect to Plaintiff's claim that Defendant Moore failed to provide his medications at the allotted time, the undersigned recommends that Plaintiff's motion for summary judgment be denied and Defendant Moore's motion for summary judgment be granted.

---

[3] The Court notes that the record contains treatment notes, completed during the relevant time period, indicating that Plaintiff's medications were to be provided at specific times of day. (Dkt. #34, Exhibits 15).

II.            **Failure to Protect Claim**

Plaintiff alleges that upon returning to the jail on January 29, 2013, he was placed in the same dormitory as prisoner Terrion Smith.  Plaintiff immediately told Defendant Montimayor that Smith had previously assaulted him and that, as a result, he feared for his safety.  Jail officials declined, however, to place Plaintiff and Smith in separate dormitories.  A few days later, Smith assaulted Plaintiff by striking him in the head with a food tray.  Plaintiff alleges that Defendant Montimayor failed to protect him from Smith in violation of his Eighth Amendment rights.

To prevail on his claim that Defendant failed to protect him, Plaintiff must establish that Defendant was deliberately indifferent to "a substantial risk of serious harm" to Plaintiff.  *Greene v. Bowles*, 361 F.3d 290, 294 (6th Cir. 2004) (quoting *Farmer v. Brennan*, 511 U.S. 825, 828 (1994)).  To establish that Defendant acted with deliberate indifference, Plaintiff must "present evidence from which a trier of fact could conclude 'that the official was subjectively aware of the risk' and 'disregard[ed] that risk by failing to take reasonable measures to abate it.'"  *Greene*, 361 F.3d at 294 (quoting *Farmer*, 511 U.S. at 829, 847).  Plaintiff can make this showing through "inference from circumstantial evidence." *Greene*, 361 F.3d at 294.  A prison official "cannot escape liability. . .by showing that, while he was aware of an obvious, substantial risk to inmate safety, he did not know that the complainant was especially likely to be assaulted by the specific prisoner who committed the assault."  *Id.* (quoting *Farmer*, 511 U.S. at 842-43).  Likewise, "where a specific individual poses a risk to a large class of inmates, that risk can also support a finding of liability even where the particular prisoner at risk is not known in advance."  *Greene*, 361 F.3d at 294.

Plaintiff does not allege that the previous assault by Smith was unusually violent or involved a dangerous or deadly weapon.  Plaintiff does not allege that Smith was unusually dangerous.

Plaintiff likewise does not allege that Smith had threatened him or any other inmate. *See, e.g., Sexton v. Neil*, 2014 WL 6453771 at *5 (S.D. Ohio, Nov. 17, 2014) ("when an inmate fails to allege that he received specific threats and that he communicated those specific threats or fears to prison personnel, the Complaint fails to state an Eighth Amendment claim for failure to protect"). Plaintiff merely informed Defendant that he had previously been assaulted by Smith. While assault, or the threat of assault, is not to be taken lightly, if prison officials were required to isolate every prisoner who has previously been involved in any sort of altercation with another inmate, the majority of inmates would likely be housed in segregation. Plaintiff has identified no authority that requires this degree of vigilance by prison officials. Rather, the Eighth Amendment obligated Defendant to take reasonable measures to protect Plaintiff from a substantial risk of harm.

Plaintiff's allegations do not suggest that Smith's presence in the same jail dormitory unit presented a risk of substantial harm. This conclusion is supported by the evidence concerning Smith's assault of Plaintiff with a food tray. The evidence reveals that Smith acted with minimal force. (Dkt. #34, Exhibits 18-20). Plaintiff stated that Smith simply "jerked the tray he was holding sideways" striking him in the head. (Dkt. #34, Exhibit 18). When asked if he suffered any injury, Plaintiff reported that he "might" have suffered a "slight bump to his head." (Dkt. #34, Exhibit 18). Plaintiff declined medical treatment. (Dkt. #35, Exhibit 19).

Likewise, Plaintiff cannot establish that Defendant failed to act reasonably in response to his concern. Plaintiff concedes that Montimayor took action in response to his concern, discussing the matter with his supervisor. While such a response may not be reasonable in response to an allegation of a specific threat of serious harm or a reasonable fear of a particularly dangerous inmate, under the circumstances here, Montimayor's response was not unreasonable.

In sum, Plaintiff cannot establish either prong of this particular claim.  He cannot establish that he faced a substantial risk of harm or that Defendant failed to take reasonable measures in response thereto.  Accordingly, with respect to Plaintiff's failure to protect claim against Defendant Montimayor, the undersigned recommends that Plaintiff's motion for summary judgment be denied and Defendant Montimayor's motion for summary judgment be granted.

**III.**         **Retaliation Claim**

Plaintiff alleges three retaliation claims.   First, Plaintiff alleges that following his September 25, 2013 return to the jail, Defendants Moore, Agueros, and Hagerman conspired to deny his medications in retaliation for complaints Plaintiff previously made against Moore.  Second, Plaintiff alleges that following his October 3, 2013 return to the jail, Defendant Moore became belligerent with Plaintiff in retaliation for complaints which Plaintiff previously made against her.  Finally, Plaintiff alleges that on an unspecified date Defendants Moore and Agueros set him up "because he had become a pain in the ass."

The elements of a First Amendment retaliation claim are well known: (1) Plaintiff was engaged in constitutionally protected conduct, (2) Plaintiff suffered adverse action which would deter a person of "ordinary firmness" from continuing to engage in such protected conduct, and (3) there exists a causal connection between the protected conduct and the adverse action - in other words, the adverse action was motivated at least in part by Plaintiff's protected conduct. *See Thomas v. Eby*, 481 F.3d 434, 440 (6th Cir. 2007) (quoting *Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999)).

With respect to causation, courts recognize that retaliation is "easy to allege" and "can seldom be demonstrated by direct evidence." *Huff v. Rutter*, 2006 WL 2039983 at *7 (W.D. Mich., July

19, 2006) (quoting *Murphy v. Lane*, 833 F.2d 106, 108 (7th Cir. 1987)).  Nonetheless, "bare allegations of malice" are insufficient to state a constitutional claim.  *Thaddeus-X*, 175 F.3d at 399 (citations omitted); *see also*, *Skinner v. Bolden*, 89 Fed. Appx. 579, 579-80 (6th Cir., Mar. 12, 2004) ("conclusory allegations of temporal proximity are not sufficient to show a retaliatory motive"); *Desmone v. Adams*, 1998 WL 702342 at *3 (6th Cir., Sep. 23, 1998) ("[a] claim of retaliation must include a chronology of events from which retaliation may plausibly be inferred").

The allegations in Plaintiff's complaint concerning these particular claims are nothing more than legal conclusions.  Plaintiff's allegations are completely devoid of any factual allegations from which it can plausibly be inferred that any protected conduct in which Plaintiff may have been engaged motivated in any way the allegedly retaliatory conduct.  Accordingly, the undersigned recommends that Plaintiff's retaliation claims be dismissed for failure to state a claim on which relief may be granted.  *See* 28 U.S.C. § 1915(e)(2) ("the court shall dismiss the case at any time if the court determines that. . .the action or appeal. . .fails to state a claim on which relief may be granted").

IV.        **Housing Claim**

Plaintiff alleges that during his incarceration at the Ingham County Jail, he "was also being housed with Michigan Department of Corrections prisoners. . .and that was a violation of [his] rights."  Inmates have "no constitutional right to be incarcerated in a particular facility or to be held in a specific security classification."  *Modena v. United States*, 2011 WL 2670577 at *7 (W.D. Mich., July 7, 2011).  Inherent in this conclusion is that, unless an inmate's housing placement or circumstance subjects him to a substantial risk of serious harm, *see Farmer v. Brennan*, 511 U.S. 825, 834 (1994), inmates likewise have no right to be incarcerated with any particular group of prisoners.  Plaintiff has

not alleged that his placement with MDOC prisoners constituted a threat, caused him any harm, or subjected him to unsafe conditions. Accordingly, the undersigned recommends that with respect to this claim, Plaintiff's motion for summary judgment be denied and Defendants' motion for summary judgment be granted.

## V.         Exercise Claim

Plaintiff claims that Defendants "never provided 1 hour out-[of]-cell exercise his entire time of incarceration" in violation of his rights. While the precise contours of Plaintiff's claim are vague and difficult to discern, the Court again notes that Defendants opted not to move the Court to compel Plaintiff to submit a more definite statement of this claim. Defendants claim they are entitled to summary judgment because "the 8th Amendment itself imposes no such requirement." The Court does not agree.

The Eighth Amendment's prohibition against cruel and unusual punishment applies not only to punishment imposed by the state, but also to deprivations which occur during imprisonment and are not part of the sentence imposed. *See Farmer v. Brennan*, 511 U.S. 825, 834 (1994). As noted above, the analysis consists of two-steps. First, the Court must determine, objectively, whether the alleged deprivation was sufficiently serious. *See Farmer*, 511 U.S. at 834. With respect to the objective prong of the analysis, contemporary standards of decency determine whether conditions of confinement are cruel and unusual. *See Hadix v. Johnson*, 367 F.3d 513, 525 (6th Cir. 2004) (citing *Rhodes v. Chapman*, 452 U.S. 337, 346 (1981)). Contemporary standards of decency are violated only by "extreme deprivations" which deprive the prisoner of the "minimal civilized measure of life's necessities." *Hadix*, 367 F.3d at 525 (quoting *Hudson v. McMillan*, 503 U.S. 1, 9 (1992)). If the objective test is met, it must

then determined whether Defendants acted with a "sufficiently culpable state of mind." *Farmer*, 511 U.S. at 834.

Federal courts are instructed to afford prison administrators "wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security." *Bell v. Wolfish*, 441 U.S. 520, 547 (1979). Accordingly, courts "have refrained from setting down hard and fast rules regarding the quantity and quality of exercise to which an inmate or pretrial detainee is entitled." *Heinz v. Teschendorf*, 2006 WL 2700813 at *4 (E.D. Mich., Sept. 19, 2006). Nevertheless, "it is generally recognized that a total or near-total deprivation of exercise or recreational opportunity, without penological justification, violates Eighth Amendment guarantees." *Id.* (quoting *Patterson v. Mintzes*, 717 F.2d 284 (6th Cir. 1983)).

The question of whether Plaintiff's allegations violate the Eighth Amendment "is a fact dependent inquiry." *See Heinz*, 2006 WL 2700813 at *4. In making this determination, the Court must consider the totality of the circumstances, including the following factors: (1) availability of reasonable alternatives to out-of-cell exercise time; (2) penological justification for the lack of out-of-cell exercise time; (3) length of the deprivation; (4) whether the inmate suffered any ill health effects as a result of the deprivation; and (5) the amount of out-of-cell time per day the inmate is allowed. *Id.* (citing *Patterson*, 717 F.2d at 289).

Defendants have presented no evidence that there existed a legitimate penological reason for denying Plaintiff out-of-cell exercise or recreation opportunities. Defendants have presented no evidence indicating what alternatives, if any, existed at the Ingham County Jail. While the precise dates of Plaintiff's incarceration are unclear, the extent of the deprivation is not insignificant. Defendants offer no evidence suggesting that Plaintiff's health was not impacted by his inability to engage in out-of-

cell recreation.  Finally, Defendants offer no evidence indicating the amount of time, if any, Plaintiff was allowed to be outside of his cell for other than exercise or recreation purposes.  In sum, Defendants have presented no evidence in support of their claim of relief.  Accordingly, the undersigned recommends that their motion for summary judgment be denied.[4]  The undersigned likewise recommends that Plaintiff's motion for summary judgment be denied as he has failed to submit evidence sufficient for him to prevail as a matter of law.

## VI.        Fourteenth Amendment Claims

Plaintiff alleges that Defendants violated his Fourteenth Amendment rights.  Plaintiff does not elaborate on this conclusion or provide any insight into such.  The Court has, therefore, interpreted Plaintiff's complaint as asserting both due process and equal protection claims.

### A.        Equal Protection

The Equal Protection Clause of the Fourteenth Amendment to the United States Constitution provides that no state shall "deny to any person within its jurisdiction the equal protection of the laws."  U.S. Const. amend. XIV, § 1.  To state an equal protection claim, a plaintiff "must adequately plead that the government treated the plaintiff 'disparately as compared to similarly situated persons and that such disparate treatment either burdens a fundamental right, targets a suspect class, or

---

[4] Defendants also suggest that Plaintiff has failed to properly exhaust this claim.  Defendants' failure to develop this argument is sufficient grounds to reject such, *see, e.g., Porzillo v. Department of Health and Human Services*, 369 Fed. Appx. 123, 132 (Fed. Cir., Mar. 12, 2010) (party "waves any arguments that are not developed"), but this argument fails for a much more fundamental reason.  Failure to exhaust administrative remedies is an affirmative defense which Defendants bear the burden of establishing.  *See Jones v. Bock*, 549 U.S. 199, 216 (2007).  While Defendants make unsubstantiated factual allegations that Plaintiff failed to properly exhaust this claim, Defendants have failed to submit evidence in support thereof.  Accordingly, the undersigned recommends that Defendants' request for relief on exhaustion grounds be rejected.

has no rational basis." *Center for Bio-Ethical Reform, Inc. v. Napolitano*, 648 F.3d 365, 379 (6th Cir. 2011). The Supreme Court has also recognized what is referred to as a "class-of-one" equal protection claims in which the plaintiff does not allege membership in a particular class or group, but instead alleges that he "has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." *Davis v. Prison Health Services*, 679 F.3d 433, 441 (6th Cir. 2012). Plaintiff has failed to allege that he was treated differently from any similarly situated individual. Accordingly, the undersigned recommends that Plaintiff's equal protection claims be dismissed for failure to state a claim on which relief may be granted. *See* 28 U.S.C. § 1915(e)(2).

### B.    Due Process

Plaintiff has failed to articulate whether he is asserting a substantive due process claim, a procedural due process claim, or both. This is of no significance, however, as Plaintiff has failed to state a claim under either provision.

### 1.    Substantive Due Process

Plaintiff alleges that Defendants violated his rights under the Fourteenth Amendment. These claims are based on the same factual allegations on which Plaintiff's First and Eighth Amendment claims are based. As detailed above, Plaintiff's causes of action clearly arise under the First and Eighth Amendments and should be analyzed and adjudicated pursuant to such. *See Albright v. Oliver*, 510 U.S. 266, 273 (1994) (recognizing that "[w]here a particular Amendment 'provides an explicit textual source of constitutional protection' against a particular sort of government behavior, 'that Amendment. . .must be the guide for analyzing these claims"). Accordingly, the undersigned recommends that Plaintiff's

Fourteenth Amendment claims be dismissed for failure to state a claim on which relief may be granted. *See* 28 U.S.C. § 1915(e)(2).

 2.  Procedural Due Process

Pursuant to the Due Process Clause of the Fourteenth Amendment, before depriving an individual of life or certain liberty or property interests the state must afford the individual with notice and an opportunity to be heard. *See Brentwood Academy v. Tennessee Secondary School Athletic Association*, 442 F.3d 410, 433 (6th Cir. 2006), *rev'd on other grounds*, 127 S.Ct. 2489 (2007); *Harris v. City of Akron*, 20 F.3d 1396, 1401 (6th Cir. 1994).  The Due Process Clause is not implicated by any and every deprivation of liberty or property, but instead applies only where an individual has been deprived of a *constitutionally protected* liberty or property interest. *See Brentwood Academy*, 442 F.3d at 433.  Plaintiff has failed to allege that he was deprived of a constitutionally protected liberty or property interest. Even had Plaintiff alleged such a deprivation, Plaintiff has failed to allege that he was denied adequate process.  Accordingly, the undersigned recommends that Plaintiff's procedural due process claims be dismissed for failure to state a claim on which relief may be granted. *See* 28 U.S.C. § 1915(e)(2).

## CONCLUSION

For the reasons articulated herein, the undersigned recommends that Plaintiff's First Amendment retaliation claims and Fourteenth Amendment claims be dismissed for failure to state a claim on which relief may be granted.  The undersigned further recommends that Plaintiff's Motion for Summary Judgment, (Dkt. #38), be **denied** and Defendants' Motion for Summary Judgment, (Dkt. #26),

be **granted in part and denied in part**.  More specifically, the undersigned recommends that Plaintiff's remaining claims be dismissed, for the reasons articulated herein, save for the following claims which be permitted to go forward: (1) from October 15, 2012, through October 7, 2013, Defendants Johnson, Moore, Agueros, Hagerman, and Shelly failed to provide Plaintiff with his properly prescribed medications; and (2) from October 15, 2012, through October 7, 2013, Defendants Montimayor, Johnson, Agueros, Hagerman, Moore, and Shelly improperly deprived Plaintiff of out-of-cell exercise or recreational opportunities.

OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Court within fourteen (14) days of the date of service of this notice.  28 U.S.C. § 636(b)(1)(C).  Failure to file objections within the specified time waives the right to appeal the District Court's order.  *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir.1981).

Respectfully submitted,


Date:  March 23, 2015                         /s/ Ellen S. Carmody
                                              ELLEN S. CARMODY
                                              United States Magistrate Judge